**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| ANTONIO REALI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Cause No. 2:19-cv-000603-MV-SV** |
| | § | |
| BOARD OF COUNTY COMMISSIONERS | § | |
| FOR THE COUNTY OF DOÑA ANA, | § | |
| CORIZON HEALTH, INC., | § | |
| CHRISTOPHER BARELA, | § | |
| VERONICA SALAZAR, | § | |
| DAVID MILLER, | § | |
| ROSLYN STROHM, | § | |
| KEVIN SILVA, | § | |
| CHAD HILL, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT DAVID MILLER, ROSLYN STROHM, AND VERONICA SALAZAR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON
QUALIFIED IMMUNITY**

Defendants David Miller, Roslyn Strohm, and Veronica Miller, by and through their counsel of record Scott Hulse PC (Henry J. Paoli & Casey S. Stevenson) file this motion for partial summary judgment requesting that the Court grant summary judgment to these defendants on the basis of qualified immunity.

**CERTIFICATE OF CONFERENCE PURSUANT TO D.N.M. LR-Civ. 7 & 10.5**

Pursuant to D.N.M. LR-Civ. 7, counsel for these defendants conferred with the other parties in this case on July 9, 2020, and confirmed that plaintiff opposes this motion, and co-defendants Board of County Commissioners, Christopher Barela, Kevin Silva, and Chad Hill do not oppose this motion. Pursuant to D.N.M. LR-Civ. 10.5, counsel for these defendants conferred

with plaintiff and co-defendants; and confirmed that they do not oppose filing of exhibits to this motion in excess of fifty pages.

## I. Introduction

Deliberate indifference is a "difficult standard" to meet, and intentionally so. *Randall v. Bd. Of Cty. Commissioners*, No. 05-6188, 184 Fed. Appx. 723, 726 (10th Cir. Jun. 13, 2006) (unpublished). Section 1983 was never intended to be a general tort statute to allow plaintiffs to have a federal remedy for state-law tort claims that are properly classified as negligence claims. *Id.*; 42 U.S.C. §1983. Plaintiff's §1983 claim tries to circumvent that rule, and these defendants should be granted qualified immunity.

As relevant here, plaintiff was incarcerated at the Doña Ana County Detention Center from May 31, 2017, to July 3, 2017. During that incarceration, he received extensive medical care from medical providers affiliated with Corizon Health, Inc., including defendants David Miller, Veronica Salazar, and Roslyn Strohm. When he raised a complaint of chest pain, he was seen. He was given medications that defendant Strohm believed were appropriate given his complaints. When he raised a complaint of chest pain, defendant Strohm ordered that plaintiff have multiple EKGs done to evaluate his complaints. He was evaluated and assessed by Strohm on multiple occasions. Plaintiff disagrees with the extent of the medical care that he received and now alleges that something more should have been done, whether it was a referral to a hospital or a specialist. But the decisions that were made by these defendants were within the realm of medical judgment. Those types of decisions are not grounds for establishing deliberate indifference under §1983.

## II. Undisputed Material Facts

1.     In November of 2016, a grand jury issued an indictment to plaintiff Reali on a charge of trafficking (by possession with intent to distribute).  (Ex. 1: Indictment, COR-Reali000382-000384).

2.     On May 31, 2017, he was booked into the Doña Ana County Detention Center after a bench warrant was issued for his failure to appear in court.  (Ex. 2: Booking report, Doc. #3293-94, 3291).

3.     Plaintiff eventually pleaded no contest to the charge of attempting to commit a felony: trafficking (possession with intent).  (Ex. 1: COR-Reali-000386—000390).

4.     Upon his intake into the detention center on May 31st, plaintiff was seen by a Corizon nurse.  (Ex. 3: Declaration of Jason Duran, Ex. A: COR-Reali000108-000112).

5.     The intake noted that plaintiff reported a prior history of seizures and a prior heart attack.  (*Id*. at COR-Reali000110).

6.     But the intake did not indicate a need for an urgent/emergent medical referral.  (*Id*. at COR-Reali000108).

7.     On the same date, plaintiff was seen by a Corizon nurse for a medical screening.  (*Id*. at COR-Reali000147).

8.     At the screening, plaintiff reported a history of post-traumatic stress disorder, anxiety, seizures, and depression.  (*Id*.)

9.     A mental health referral was completed to allow plaintiff to be seen by a mental health provider.  (*Id*).

10.     On June 6th, plaintiff was seen by defendant Strohm for a chronic care clinic appointment, and no significant medical concerns were raised by plaintiff concerning his condition.  (*Id*. at COR-Reali000146).

11.     The chronic care clinic assessment noted that plaintiff was receiving Depakote per a prescription from his psychiatrist.  (*Id*. at COR-Reali000154-000155).[1]

12.     Plaintiff reported to Strohm that he had chest pains, but that the pain would go away.  (*Id*.).

13.     Follow-up appointments were scheduled to monitor plaintiff's condition.  (*Id*. at COR-Reali000145).

14.     On June 8th, Strohm ordered an EKG to be performed on plaintiff to determine a "baseline" for plaintiff's chest complaints.  (*Id*. at COR-Reali000148).

15.     On June 9th, plaintiff had an EKG performed that was interpreted as being normal.  (*Id*. at COR-Reali000204).

16.     On June 10th, plaintiff was seen in the medical unit to allow the completion of various tests, including a comprehensive metabolic panel, a lipid panel, and a urinalysis.  (*Id*. at COR-Reali000144).

17.     On June 17th, plaintiff was seen by defendant Salazar because of a complaint of chest pain.  (*Id*. at COR-Reali000143).

---

[1] 11a: Plaintiff received regular doses of medications from the Corizon medical staff during his incarceration.  The medication administration records show that plaintiff received: Depakote, Remeron, Prilosec, and Clonidine.  (Ex. 3: Declaration of Jason Duran, Ex. A: COR-Reali000185-000189).

18.     During this assessment, plaintiff reported that he was upset because the phones at the detention center were broken, but that his chest pain had resolved.  (*Id.*).

19.     Salazar noted that plaintiff's blood pressure was elevated, and she advised defendant Strohm via telephone.  (*Id.*).

20.     In response, Strohm ordered that plaintiff receive Clonidine, and that he undergo blood pressure checks.  (*Id.*).

21.     Salazar's progress note indicates that plaintiff received various medications, including Clonidine, Depakote, and Remeron on June 17th.  (*Id.*).

22.     On June 19th, plaintiff was evaluated in the medical unit of the detention center because of his complaint that he had heart problems.  (*Id.* at COR-Reali000142).

23.     Despite the complaint, plaintiff denied having any chest pain or shortness of breath.  (*Id.*).

24.     Plaintiff's vital signs were taken, and he was informed of his blood pressure reading.  (*Id.*).

25.     In response, plaintiff stated "Oh, that's not bad.  Can I go?".  (*Id.*).

26.     Plaintiff was also seen in the medical unit on June 21st for a vital signs assessment.  (*Id.* at COR-Reali141).

27.     Plaintiff denied any medical concerns during this assessment.  (*Id.*).

28.     A more detailed history and physical exam was conducted by a nurse on June 21, 2017.  (*Id.* at COR-Reali000116-000121).

29.     At the time of this exam, plaintiff's heart rate was noted as being normal, and his heart rhythm was regular.  (*Id.* at COR-Reali000120).

30.     Plaintiff was seen by another Corizon nurse, Andrea Mook, on the morning of July 1st as a result of his complaint of chest pain. (*Id.* at COR-Reali000137).

31.     Plaintiff's vital signs were taken, and an EKG was ordered.   (*Id.*).

32.     Plaintiff was seen by Ms. Mook again at 9:52 a.m. on July 1st.   (*Id.* at COR-Real000136).

33.     During this encounter with Ms. Mook, plaintiff reported that his pain was gone. (*Id.*).

34.     The EKG that was performed at 9:52 a.m on July 1st was "abnormal".  (*Id.* at COR-Reali000202).

35.     However, Strohm noted that plaintiff had a clinical non-acute presentation in that he reported that his chest pain had resolved in a few minutes, and the chest pain did not radiate. (*Id.*).

36.     Strohm ordered that plaintiff be kept in the medical unit for observation until a repeat EKG was performed.  (*Id.* at COR-Reali000148).

37.     An EKG was performed on plaintiff at 10:56 a.m. on July 1st, which was "normal". (*Id.* at COR-Reali000200).

38.     On July 1st at approximately 10:41 p.m., plaintiff was seen by defendant Salazar. (*Id.* at COR-Reali000134).

39.     Salazar's note indicates that that plaintiff refused to let anyone touch him, but that he eventually moved to a wheelchair to be transported to the medical unit.  (*Id.*).

40.     During this encounter, Plaintiff reported to Salazar that his pain was "starting to subside".  (*Id*).

41.     Salazar advised Strohm of the situation, and Strohm ordered that plaintiff receive a dose of Clonidine and that he receive Lisinopril every morning.  (*Id*. at COR-Reali000134).

42.     Salazar also scheduled a provider appointment for follow up on plaintiff's condition.  (*Id*.).

43.     Another EKG was performed on July 1st at 10:55 p.m., which was "borderline" and that showed lateral non-specific ST changes.  (*Id*. at COR-Reali000198).

44.     Plaintiff had another EKG performed at 9:11 a.m. on July 2nd, which showed inferior/lateral ST-T changes. (*Id*. at COR-Reali000196).

45.     Another EKG was performed at 10:30 a.m. on July 2nd, and it showed non-specific lateral ST changes.  (*Id*. at COR-Reali000194).

46.     On July 2nd at approximately 10:48 a.m., plaintiff was seen by defendant Strohm. (*Id*. at COR-Reali000133).

47.     He complained of pain, but then stated that his pain had resolved and that he was ok.  (*Id*.).

48.     He also reported that his complaints of chest pain had been assessed at the VA multiple times, but that they couldn't find anything wrong.  (*Id*.).

49.     At the time of this assessment, Strohm noted that plaintiff reported that he had no pain now, and she assessed plaintiff as being asymptomatic and having anxiety.  (*Id*.).

50.     She noted that plaintiff had two similar episodes with similar complaints, but they had resolved.  (*Id*.).

51.     Strohm ordered that plaintiff receive a dose of Clonidine and a follow up EKG after the medication dose was administered.  (*Id*.).

52.     Strohm's record indicates that plaintiff was asymptomatic at the time of her evaluation.  (*Id*.).

53.     At approximately 6:58 p.m. on July 2nd, defendant Miller took plaintiff's vital signs and noted that they were within normal parameters.  (*Id*. at COR-Reali000132).

54.     Miller's record indicates that plaintiff reported no complaints.  (*Id*.).

55.     Miller provided the Clonidine medication to plaintiff as ordered.  (*Id*.).

56.     Miller's record also indicates that plaintiff's condition would be monitored.  (*Id*.).

57.     On July 3rd at approximately 3:38 a.m., defendant Salazar's medical record indicates that plaintiff complained of chest pain and claimed that he had difficulty breathing.  (*Id*. at COR-Reali000131).

58.     Salazar's note indicates that plaintiff lost consciousness and exhibited "seizure like activity."  (*Id*.).

59.     As a result, an oxygen mask was applied and County detention center officers were instructed to call for an ambulance at 3:44 a.m.  (*Id*.).

60.     Defendant Strohm was advised of the situation by phone at 3:46 a.m., and she ordered 4 mg of Ativan and directed that plaintiff be transferred to the emergency room via ambulance.  (*Id*.).

61.     Plaintiff received the Ativan that was ordered by Strohm at 3:51 a.m.  (*Id*.).

62.     Defendant Miller began CPR on plaintiff at 3:55 a.m., and EMTs took over the CPR at 3:56 a.m.  (*Id*.).

63.     Plaintiff received a dose of Narcan from the EMTs and was transported to the hospital at 4:10 a.m.  (*Id*.).

64.     Plaintiff was transported to Memorial Medical Center at approximately 4:20 a.m. in the early morning hours of July 3, 2017.  (*Id*. at COR-Reali000131).

65.     Plaintiff left Memorial Medical Center against medical advice on or about July 12, 2017.  (*Id*. at COR-Reali00099-000101).

66.      During plaintiff's incarceration in 2017, Corizon employed defendants Salazar, Miller, and Strohm as medical providers who provided care to inmates at the detention center.  (Ex. 3: Declaration Jason Duran, ¶3).

67.     Salazar and Miller do not have any supervisory control or responsibility over other persons that provided medical care to plaintiff Reali.  (Ex. 3: Declaration of Jason Duran, ¶3).

68.     Other than what is reflected in the Corizon medical chart relating to plaintiff Reali, Salazar and Miller did not have any other interactions or communications with plaintiff.  (Ex. 4: Declaration of Miller);  (Ex. 5: Declaration of Salazar).

### III. Argument[2]

Count one of plaintiff's second amended complaint alleges a due process claim against Defendants based on allegations that plaintiff received inadequate medical care during his incarceration.  (Dkt. #59: Pl.'s Second Am. Compl.).  That claim can only be asserted via 42 U.S.C. §1983.  *VR Acquisitions LLC v. Wasatch Cty*., 853 F.2d 1142, 1144 n.1 (10th Cir. 2017) ("§1983 is the remedial vehicle for raising claims based on the violation of constitutional rights").

---

[2] This motion for summary judgment only challenges plaintiff's federal §1983 claim contained in count 1 of plaintiff's second amended complaint.  (Dkt. #59: Pl.'s Second Am. Compl.); 42 U.S.C. §1983.  Plaintiff has asserted separate state law claims against these defendants in count 2 of his second amended complaint.

Properly considered, plaintiff's complaints with his medical care and treatment during his incarceration is an allegation of deliberate indifference under the Due Process Clause of the Fourteenth Amendment. *Sawyers v. Norton*, No 19-1230, 2020 WL 3424927, at *7 (10th Cir. Jun. 23, 2020) ("the constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause"). But the same analysis for deliberate indifference under the Eighth Amendment applies to a claim that is asserted under the Fourteenth Amendment. *Id.*

### A. Defendants Are Entitled To Raise Qualified Immunity With Respect to Plaintiff's §1983 Claim.

In the Tenth Circuit, a government contractor, like Corizon, is entitled to raise qualified immunity as a defense to a §1983 claim. *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.3d 714, 717 (10th Cir. 1988) (by implication); *Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1108 (10th Cir. 2016); *Tanner v. McMurray*, 429 F.Supp.3d 1047, 1201-05 (D.N.M. 2019) (government contractor that provided health care to inmates pursuant to a contract with Bernalillo County was entitled to raise qualified immunity).

The same holds true with respect to the individual medical providers that Corizon employed or affiliated with to provide medical care. *See Walker v. Mohiuddin*, 947 F.3d 1244 (10th Cir. 2020) (granting qualified immunity to individual Corizon physician who provided medical care to inmates). Accordingly, these Defendants are entitled to raise qualified immunity as a defense to plaintiff's §1983 claim.

### B. Plaintiff Cannot Overcome Defendants' Qualified Immunity Because There Is No Clearly Established Violation Of Plaintiff's Constitutional Rights On These Particularized Facts.

When a defendant raises qualified immunity as a defense, the burden is on the plaintiff to demonstrate that: (i) the defendant violated a statutory or constitutional right, and (ii) the right was clearly established at the time of the challenged conduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

A clearly established right is one that is sufficiently "clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). For a violation of a constitutional right to be clearly established, a plaintiff must identify a Supreme Court or published Tenth Circuit decision, or show that the established weight of authority from other courts has found the law to be what the plaintiff maintains. *Perry v. Duborow*, 892 F.3d 1116, 1123 (10th Cir. 2018).

This rule does not allow a plaintiff to rely on generalities. Instead, the authority that the plaintiff relies on must be particularized to the specific facts of the plaintiff's case. *Id.* (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Before the court can determine that the law is clearly established, it should "identify a case where an official acting under similar circumstances as . . . . [these Defendants] was held to have violated" the plaintiff's constitutional rights. *Perry,* 892 F.3d at 1124. "General statements of the law" are insufficient for a plaintiff to meet this burden. *Id.*

This rule also requires the plaintiff to point to whether the "violative nature of the particular conduct" is clearly established at the time of the challenged action. *Mullenix v. Luna*, 135 S.Ct. 305, 308 (2015). The law must be so thoroughly established and consistently recognized as to be "indisputable and unquestioned." *Lobozzo v. Colo. Dep't of Corr.*, No. 10-1396, 429 Fed. Appx.

707, 710 (2011); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("existing precedent must have placed the statutory or constitutional question beyond debate").

Here, the proper focus for plaintiff's claim against these Defendants is whether it was clearly established that they violated plaintiff's clearly established rights given plaintiff's complaints of chest pain.  That analysis requires a determination of the extent of the treatment actually provided to plaintiff, plaintiff's actual complaints, the assessments provided to plaintiff, and the actions taken by Defendants.  (Facts #4-63).  That is the only way to ensure that the court considers the violative nature of the particular conduct that is alleged against Defendants, and whether that particular conduct was a clearly established violation of plaintiff's constitutional rights.

The treatment provided on behalf of Defendants included: (i) evaluating plaintiff's condition, including his complaints of chest pain from June 6th through July 3[rd][3], (ii) providing medications[4], (iii) ordering multiple EKGs to assess plaintiff's complaints as was done by Strohm[5], and (iv) providing emergency care when plaintiff's condition deteriorated.[6]  This occurred in the context of a person who had periodic complaints, but who would report that his chest pain had resolved or had gone away which minimized the need for additional medical care and treatment.[7]

Defendants are unaware of any binding Supreme Court or Tenth Circuit decisions that articulate any rule that these defendants violated given the particularized facts of this case.  Without

---

[3] For ease of reference, defendants refer to the numbered facts contained in this motion: Facts #10-#56.
[4] Facts #11a, #20, #21, #41, #51, #56.
[5] Facts #14, #15, #34, #37, #43, #44, #45, #53, #54.
[6] Facts #57, #58, #59, #60, #61, #62, #63, #64.
[7] Facts #12, #18, #33, #35, #40, #47, #49.

that authority, or the great weight of authority from other courts that is particularized to plaintiff's specific complaints and the actual treatment that plaintiff received during his incarceration, plaintiff cannot establish a violation of clearly established rights.

     **C.**     **Defendants Are Entitled to Qualified Immunity Because Plaintiff's Claims Are Premised On Allegations That Fit Within The Realm of Medical Judgment, and Those Allegations Do Not Allege A Violation Of A Constitutional Right.**

Plaintiff received extensive medical care during his incarceration at the Dona Ana County Detention Center. Prior to July 3, 2017, plaintiff was seen, assessed, or had treatment provided to him in the form of tests or assessments by the medical providers on at least fifteen separate occasions. (Facts #4: May 31st, #7: May 31st, #10: June 6th, #14: June 8th, #15: June 9th, #16: June 10th, #17: June 17th, #22: June 19th, #26: June 21st, #28: June 21st, #32: July 1st, #43: July 1st, #44: July 2nd, #46: July 2nd, #53: July 2nd). Treatment was provided with respect to these assessments, including medications, laboratory tests, evaluations. (*Id.*).

Plaintiff disagrees with the extent of that treatment, but that is not sufficient to establish deliberate indifference. The essence of plaintiff's claim against Defendants is that the medical care and treatment that he received is inadequate, and that different medical care and treatment was appropriate. (Dkt. #59: Pl.'s Second Am. Compl., ¶¶159-196). He claims that he should have received different medical care in the form of a referral to a hospital or specialist in light of his chest complaints.

This type of claim is insufficient to establish deliberate indifference for purposes of overcoming a medical provider's qualified immunity in a §1983 case. The subjective component of a deliberate indifference claim is not satisfied where a medical professional exercises medical judgment, such as the decision as to whether to consult a specialist or to undertake additional

medical tests for a patient.  *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).  In *Self*, the plaintiff

asserted deliberate indifference under §1983 arising from an alleged failure to adequately treat his

heart condition.  *Self*, 439 F.3d at 1229.  While incarcerated, the plaintiff received over the counter

medications, had lab work ordered, and was scheduled for a re-evaluation by the medical staff.  *Id*.

But it turned out that plaintiff's condition was more serious, endocarditis, which if treated earlier

may have lessened the damage that plaintiff alleged his heart sustained as a result of the delay in

treatment.  *Id*.  On appeal to the Tenth Circuit, the court held that summary judgment for the

medical providers was appropriate.  *Id*. at 1235.  For purposes of deliberate indifference, there is

no constitutional violation when a medical professional resolves the question of whether additional

diagnostic techniques or forms of treatment are indicated.  *Id*. at 1232.  "Where a doctor orders

treatment consistent with the symptoms presented and then continues to monitor the patient's

condition, an inference of deliberate indifference is unwarranted under our case law."  *Id*. at 1233-

33.

Similar reasoning was used by the Tenth Circuit in *Johnson*.  There, the Tenth Circuit

rejected a §1983 claim based on an allegation that a prisoner received an improper prescription.

*Johnson v. Stephan*, 6 F.3d 691 (10th Cir. 1993).  The prisoner complained that his leg cramps were

treated with a leg stocking which amounted to an inadequate prescription given his actual

condition.  *Id*. at 692.  But the Tenth Circuit made short work of this claim: the allegations "amount

to a difference of opinion with the medical staff which does not rise to the level of a constitutional

violation."  *Id*.;  *see also Wilson v. Wilcox*, No. 14-cv-00421-MSK, 2020 WL 1433506, at *13-14

(D. Colo. Mar. 3, 2020) (rejecting plaintiff's allegation of deliberate indifference that was premised

on the claim that he did not receive appropriate pain medication).

In a similar sense, the Supreme Court explains that a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In short, allegations of medical malpractice do not become a constitutional violation merely because the plaintiff happens to be incarcerated. *Id.*; *see also Estate of Vallina v. Petrescu*, 757 Fed. Appx. 648 (10th Cir. Dec. 4, 2018) ("a medical professional's failure to treat a serious condition properly does not" constitute deliberate indifference) (unpublished) (citing *Sealock v. Colo.*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

Further, a disagreement with the medical care that is actually provided to an inmate who is incarcerated does not state a viable claim for deliberate indifference under §1983. *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). In *Perkins*, the court rejected plaintiff's claim under the Eighth Amendment that was premised on the claim that he did not receive the correct medications for his HIV condition. *Perkins*, 165 F.3d at 811. Plaintiff did receive other medications, but he disagreed with the medical staff about the course of his treatment and whether those medications were appropriate. *Id.* The court held that "this disagreement does not give rise to a claim for deliberate indifference to serious medical needs." *Id.* As a result, it was proper for the district court to dismiss plaintiff's Eighth Amendment claim. *Id.*

Plaintiff's §1983 claim cannot be reconciled with these rules. As relevant here, plaintiff was evaluated on multiple occasions for his complaints of chest pain. Defendant Strohm assessed plaintiff, provided treatment, and ordered that medications be provided. (Facts #10, #12-14, #20, #35-36, #41, #51). Strohm did not ignore plaintiff's complaints, but instead ordered tests to try to evaluate plaintiff's condition. (Facts #14, #15, #34, #37, #43, #44, #45, #49, #50). If Strohm was

truly indifferent to plaintiff, wouldn't it have been much easier for her to refuse to assess plaintiff, refuse to provide medications, and refuse to order the EKG tests that plaintiff actually received? *See Self*, 439 F.3d at 1232-33 ("where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law").

On her own behalf, Salazar saw plaintiff only twice before the events of July 3rd.  (Facts #17-22, #38-#41).  In connection with Salazar's June 17th encounter with plaintiff, her medical record states that plaintiff reported that his chest pain had resolved.  (Fact #18).  There is nothing in the record to indicate that plaintiff requested further emergency or non-emergent medical care from Salazar, which she deliberately denied.  (*Id*.).  For the July 1st encounter, plaintiff reported to Salazar that his pain had started to subside, and Salazar consulted with Strohm about what Strohm believed was appropriate to do given plaintiff's complaints.  (Facts #38-#41).  With respect to the July 3rd encounter, Salazar's note indicates that she was involved in providing treatment to plaintiff, that she consulted with Strohm, and administered medication to plaintiff.  (Facts #58-#61).

Defendant Miller also had very limited interaction with plaintiff.  He saw plaintiff on one occasion prior to July 3rd and noted that his vital signs were normal.  (Fact #55); (Ex 4: Declaration of Miller, ¶3). Miller also assisted with administering CPR to plaintiff shortly before plaintiff was transported to the hospital for additional care.  (Fact #62).

Any alleged misdiagnosis by Strohm, Salazar, or Miller, or the complaint that they should have referred plaintiff to a specialist earlier is not grounds for establishing deliberate indifference. *See Self*, 439 F.3d at 1232.  None of them recognized an inability to treat plaintiff.  They did not

completely deny care and treatment to plaintiff, and they were not failing to treat plaintiff's condition. *Supre v. Ricketts*, 792 F.2d 958, 963 (10ᵗʰ Cir. 1986) (reversing judgment in favor of plaintiff who alleged deliberate indifference despite the claim that he should have received one form of treatment because there was no "total failure to give medical attention" to the plaintiff's needs).

Merely because plaintiff alleges that something more should have been done to prioritize his condition does not overcome the qualified immunity that affords protection to Defendants. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) ("allegations of inadvertent failure to provide adequate medical care, or of a negligent  . . . diagnosis simply fail to establish he requisite culpable state of mind" for purposes of deliberate indifference).   In fact, courts have regularly upheld qualified immunity for medical professionals with respect to these types of claims.  *Kirk v. Flores*, No., 660 Fed. Appx. 579 (10ᵗʰ Cir. Aug. 17, 2016) (unpublished).  In *Kirk*, the inmate alleged that the pain relievers, muscle relaxants, and migraine medication that he received were inadequate.  *Id*. at 581. He claimed that he should have been sent to an orthopedic physician and that he did not receive a CT scan of his head.  *Id*.  Despite these allegations, the Tenth Circuit held that the inmate did not state a constitutional violation sufficient to avoid the defendant's qualified immunity.  *Id*. at 582. The allegation was based on the inmate's disagreement with the course of medical care actually provided by the nurse.  *Id*.  Accordingly, the district court properly granted summary judgment to the nurse.  *Id*.

Other district courts have reached the same conclusion.  *See Evans v. Wright*, No., 2015 WL 11831265, at *4 (E.D. Tex. Dec. 23, 2015) (plaintiff's disagreement with the medical care that he actually received was not sufficient to overcome the defendant's qualified immunity);

*Cunningham v. Lewis*, No. 3:12cv443, 2014 WL 1276520, at *3 n.2 (S.D. Miss. Mar. 27, 2014) (plaintiff's allegation that different medical care should have been provided was "insufficient to overcome Defendants' qualified immunity defense");  *Steele v. Weber*, No. CIV 06-4001-RHB, 2006 WL 3544719, at *7 (D. S.D. Dec. 8, 2006) (plaintiff's disagreement with treatment decisions did not rise to the level of a constitutional violation sufficient to overcome a physician's qualified immunity defense);  *Fisher v. Neele*, No. 3:10-CV486, 2011 WL 887615, at *7 (E.D. Va. Mar. 14, 2011) (nurse entitled to qualified immunity despite plaintiff's claim that he should have underwent an MRI rather than the treatment that he did receive).

### D. Plaintiff's Attempt To Rely On Stray Remarks Allegedly Made By Miller & Salazar Is Insufficient to Establish Deliberate Indifference.

Plaintiff's second amended complaint emphasizes that certain remarks were allegedly made by defendants Miller and Salazar.  (Pl's. Second Am. Compl., ¶134).  Even when coupled with plaintiff's other allegations, these allegations do not establish a viable claim under §1983.

At the outset, it should not be lost on the Court that plaintiff alleges that defendants Miller or Salazar made comments about plaintiff during the time that plaintiff was receiving emergency treatment.  (Pl.'s Second Am. Compl., ¶134).  Plaintiff alleges that these comments were made *while* plaintiff was receiving emergency care on July 3, 2017, which is the very thing that plaintiff alleges should have been done for his alleged heart condition.  There are no allegations in the second amended complaint that suggest that Miller or Salazar made remarks that exhibited deliberate indifference *before* plaintiff received the emergency care that he alleges was necessary. As such, the remarks, even if taken as true, are not probative on Miller and Salazar's subjective state of mind and whether they exhibited deliberate indifference prior to the events of July 3, 2017. *See Burkett v. Zeller*, No. 2:09-CV-0185, 2010 WL 445946, at *5 (N.D. Tex. Feb. 9, 2010)

(remarks by prison guards after the inmate was injured in an attack were not relevant to deliberate indifference by the guards to the inmate's safety prior to the attack);  *see also Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) ("verbal threats and harassment" are generally excluded from the "cruel and unusual punishment inquiry" under the Eighth Amendment); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("verbal harassment . . .  is insufficient to state a constitutional deprivation" under §1983).

Second, even taking the remarks as true, there is nothing to link the alleged remarks to any deliberate indifference that was exhibited by defendants with respect to plaintiff's health condition. *Hunnicut v. DeSantiago*, 429 F.Supp.3d 905, 919 (D.N.M. 2019) (racist remarks did not establish constitutional violation because there was no evidence of discrimination beyond the remarks).  A causal connection is required to establish a deliberate indifference claim.  *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

That is why courts have routinely rejected the claim that remarks, even if claimed to be insensitive or callous, are somehow evidence of deliberate indifference when a medical provider actually provides care and treatment to an inmate. *See Figueroa v. Dep't of Corr.,* No. CIV-10-760-M, 2012 WL 1309712 (W.D. Okla. Mar. 13, 2012).  For example, the plaintiff in *Figueroa* alleged that a nurse stated the "reason why you did not take care of your chest pains on the outside was because you were busy shooting people." *Id*. at *5.  But even that insensitive remark was not probative evidence of deliberate indifference, especially in light of the lack of an allegation that plaintiff was denied all medical care. *Id.*; *see also Key v. McLaughlin*, No. 10-cv-00103, 2013 WL 1507950, at *12 (D. Colo. Mar. 19, 2013) (allegation that prison doctor made remarks to plaintiff did not establish deliberate indifference in light of the substantial evidence that plaintiff

received medical care);  *Love v. Hoffman*, No. 18-cv-386-jdp, 2019 WL 3997503, at \*7 (W.D. Wis. Aug. 29, 2019) (granting summary judgment to nurses who were alleged to make remarks to plaintiff because the evidence stablished that the nurses evaluated plaintiff, provided treatment suggestions, and consulted with his doctor);  *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) ("verbal threats and harassment" are generally excluded from the "cruel and unusual punishment inquiry" under the Eighth Amendment).[8]

As applied to plaintiff's claims, there is nothing to indicate that the alleged remarks that plaintiff relies on caused any violation of his constitutional rights.  There is no doubt that plaintiff was extensively treated and assessed by defendants.  That went on for multiple weeks, and on multiple occasions prior to July 3, 2017.  (Facts #4--#62).

### E.   Defendants Miller & Salazar Are Entitled to Qualified Immunity Because There Is No Evidence That They Subjectively Had Knowledge Of And Disregarded An Excessive Risk To Plaintiff's Health.

To hold a defendant liable for deliberate indifference, the defendant must know of and disregard an excessive risk to inmate health or safety, and the defendant must be aware of facts from which the inference can be drawn that a substantial risk of harm exists.  *Farmer v. Brennan*,

---

[8] Other courts outside of the Tenth Circuit have reached a similar conclusion.  *See Hagan v. Rogers*, No. 06-4491 (GEB), 2010 WL 5343188, at \*10 n.1 (D.N.J. Dec. 20, 2010) (allegation of racial slurs and verbal threats did not state a viable claim under §1983 because there was no action taken by the defendant as a result of the threats);  *Walker v. Cox*, No. 15-cv-293-jdp, 2019 WL 1332579, at \*7 (W.D. Wis. Mar. 25, 2019) (nurse's remarks to plaintiff did not show deliberate indifference in light of the actual care and treatment that plaintiff received);  *Edwards v. Kukua*, No. 09-147, 2010 WL 4806862, at \*6 (S.D. Tex. Sept. 24, 2010), *report & recommendation adopted*, 2010 WL 4791802 (S.D. Tex. Nov. 18, 2010) (alleged unprofessional remark delivered to a patient experiencing pain does not rise to the level of deliberate indifference because "verbal abuse is not actionable pursuant to §1983");  *Beard v. Gusman*, No. 13-6633, 2015 WL 422999, at \*3 (E.D. La. Feb. 2, 2015) ("being callous or rude in the context of medical care does not an Eighth Amendment violation make" because "there is no constitutional right to be spoken about with sensitivity").

511 U.S. 825, 837 (1994).  Additionally, the defendant must actually draw the inference and disregard the risk.  *Id.*

Constructive notice or knowledge that would be gained by what a plaintiff characterizes is a reasonable person in the defendant's shoes is not enough.  In *Farmer*, the Supreme Court rejected the plaintiff's argument that the deliberate indifference standard should employ an objective test of knowledge that focuses on what a defendant knew, or should know.  *Id.* at 841.  The court explained that "we cannot accept [plaintiff's] argument . . . that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."  Id. at 841-42.

As applied here, the medical chart relating to the plaintiff indicates that defendant Miller only saw plaintiff on two occasions.  The first was on July 2nd when Miller took plaintiff's vital signs and documented that they were within normal parameters.  (Fact #55).  During this encounter, Miller's record indicates that he provided plaintiff with the medication that had been ordered by Strohm.  (Fact #56).  The second time that Miller saw plaintiff was on July 3rd when he administered CPR to plaintiff.  (Fact #62).  There are no other records to indicate that Miller ever interacted with plaintiff other than on this occasion.  (Ex. 4: Declaration of David Miller, ¶3: (Fact #68).

With respect to Salazar, the medical chart indicates that she only saw plaintiff on three occasions: June 17th, July 1st, and July 3rd.  (Facts #17-22, #38-#41, #57-#58).  For the June assessment, Salazar's record indicates that plaintiff reported that his chest pain had resolved.  (Fact #18).  For the July 1st encounter, plaintiff reported to Salazar that his pain had started to subside,

and Salazar consulted with Strohm about what Strohm believed was appropriate to do given plaintiff's complaints.  (Facts #39-#41).  With respect to the July 3rd encounter, Salazar's note indicates that she was involved in providing treatment to plaintiff, that she consulted with Strohm, and administered medication to plaintiff.  (Facts #58-#61).   There are no other records to indicate that she saw or evaluated plaintiff other than on these dates.  (Ex. 5: Declaration of Veronica Salazar, ¶3: Fact #68).

There is nothing in the plaintiff's medical records to indicate that either Salazar or Miller subjectively disregarded an excessive risk to plaintiff's condition.  It is insufficient for plaintiff to lump Salazar and Miller in with the other defendants without identifying and introducing evidence on what specific conduct that they engaged in that rises to the level of deliberate indifference. *Walker v. Mohiuddun*, 947 F.3d 1244 (10th Cir. 2020).  In *Walker*, the plaintiff asserted a deliberate indifference claim pursuant to §1983 against a Corizon medical provider, Dr. Mohiuddun.  *Id*. at 1246.  But the plaintiff's complaint failed to identify what specific actions that Dr. Mohiuddun took that violated the plaintiff's constitutional rights.  *Id*. at 1250.  This violated the longstanding rule that a plaintiff "must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiff['s] clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind." *Id*. at 1249-50.  To comply with this rule, a plaintiff must "do more than show that [his] rights were violated, or that defendants as a collective and undifferentiated whole were responsible for those violations." *Id*.  Instead, a plaintiff must establish "by specific actions taken" by a particular defendant" or "specific policies" over which that defendant has supervisory responsibility, that the individual defendant violated the plaintiff's

constitutional rights. *Id*. at 1250. A failure to comply with the specificity requirement spells doom for a plaintiff's §1983 claim and entitles a defendant to qualified immunity. *Id*.; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (defendant entitled to qualified immunity because the plaintiff's complaint failed to make clear who is alleged to have done what to whom").

Although *Walker* was decided in the context of review of a ruling on a motion to dismiss, the same rule applies in the context of a motion for summary judgment. If pleading allegations that are not specific to a defendant and the actions taken by that defendant are insufficient to overcome qualified immunity, then the absence of admissible summary judgment evidence on that point should also be insufficient to overcome a defendant's qualified immunity. *See Bark v. Chacon*, 504 Fed. Appx. 741, 745-46 (10th Cir. Dec. 5, 2012) (affirming summary judgment because of the lack of evidence from plaintiff to clarify what role that the individual defendants took and how they violated plaintiff's constitutional rights) (unpublished opinion).

Without evidence that establishes an "affirmative link" between what Salazar and Miller did to violate plaintiff's constitutional rights, there should not be liability under §1983 as a matter of law. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (holding that an affirmative link between the violation alleged and the individual defendant's conduct is a required element). Here, there is no direct evidence that Salazar or Miller exhibited deliberate indifference to plaintiff. In fact, on the occasions where these defendants actually interacted with and saw the plaintiff, these defendants provided care and treatment to plaintiff. On their own behalf, neither Miller or Salazar had any supervisory control or responsibility over any persons that were involved in providing medical care to plaintiff Reali. (Ex. 3: Declaration of Jason Duran, Fact #67). As such, they cannot be liable for deliberate indifference without some

direct evidence of their personal participation in acts that exhibit deliberate indifference to plaintiff's condition.  *Cf. Jenkins v. Denver Cty. Jail*, 203 F.3d 835, 2000 WL 84893, at *2 (10th Cir. Jan. 27, 2000) (without personal participation in the constitutional violation, a defendant cannot be liable under §1983).

For these reasons, defendants David Miller, Roslyn Strohm, and Veronica Salazar request that the Court grant this motion and dismiss plaintiff's claims against these defendants under 42 U.S.C. §1983 with prejudice to re-filing, and that the Court also grant these defendants any additional and further relief to which they may be justly entitled.

Respectfully submitted,

**SCOTT HULSE, P.C.**
201 North Church Street, Suite 201
Las Cruces, NM 88001
(575) 522-0765
575-522-0006 Facsimile
or
201 E. Main Dr., Ste. 1100
El Paso, Texas 79901
(915) 533-2493
(915) 546-8333 Telecopier

By:   */s/Henry J. Paoli*_____
**HENRY J. PAOLI**
**CASEY S. STEVENSON**
Attorneys for defendant Corizon Health, Inc.,
Veronica Salazar, Roslyn Strohm, & David Miller

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2020, a true and correct copy of this document was filed electronically through the e-filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew C. Coyte & Alyssa Quijano
3800 Osuna Road NE, Ste. 2
Albuquerque, NM 87109
mcoyte@me.com
aquijano@coytelaw.com
Attorneys for plaintiff

Damian Martinez
Holt Mynatt Martinez, P.C.
P.O. Box 2699
Las Cruces, NM 88004-2699
dlm@hmm-law.com
Attorneys for the Board of County Commissioners for the County of Doña Ana.

Bradley Springer
Holt Mynatt Martienz, P.C.
P.O. Box 2699
Las Cruces, NM 88004-2699
bas@hmm-law.com
Attorneys for the Board of County Commissioners for the County of Doña Ana.

Haley R. Grant
Holt Mynatt Martienz, P.C.
P.O. Box 2699
Las Cruces, NM 88004-2699
hrg@hmm-law.com
Attorneys for the Board of County Commissioners for the County of Doña Ana.

*/s/Henry J. Paoli*_____
**HENRY J. PAOLI**